Good morning. May it please the court. My name is Eitan Kaslianich. I'm representing Martin Schiaffino in this appeal. Schiaffino is a veteran who was found to be 70% disabled by the VA based upon PTSD. And based on that rating, he was also found to be eligible for individual unemployability. He also has a number of other impairments, primarily mental impairments. Now, the main issue here, there's a couple of them, and I'm not sure which ones you're going to want me to discuss, so I'll just address them, and please feel free to interrupt at any time, as I'm sure you will. The issue of, he was sent, Social Security sent him to be evaluated by a psychologist, Dr. Thompson. And Dr. Thompson wrote a detailed evaluation and basically opined that he had a number of limitations that reasonably would prevent him from working. The ALJ rejected her opinion, and the ALJ did not state any legitimate reason, and I cover all the reasons that she did state in my brief. That's one issue. The other main issue, I think, involves his testimony and a mistake by the ALJ that, as I now realize, was not entirely her fault, but still she should have asked about this. And it's the issue of her rejecting his testimony in part because even though he has PTSD from being in the military and talked about how he had been affected by combat, his DD-214, I believe it's called, it wasn't in the record. It was missing. And there was nothing in the record that clearly identified that he'd been overseas. So rather than asking him what's the deal, she just rejected his testimony. Well, his hearing attorney requested this document, and sure enough it shows that he was stationed in Panama during the war, the very brief, but the war that was in Panama. And so that completely undermines the ALJ's, one of the ALJ's reasons for rejecting his testimony. But arguably... Is this document now in the record? Yes, it is. It was submitted to the Appeals Council. I see. And so arguably the Appeals Council should have seen that, compared it to the ALJ's comment, rejecting his testimony based on the fact that he claims to have all these problems, but the record doesn't show that he was overseas. And they should have remanded, but they did not. Where did the ALJ say that? That she was rejecting his testimony... For that reason. For that reason? I saw other reasons, but I didn't... I'm sorry? I saw other reasons, but I didn't notice that reason. Let's see. He mentions that it shows no foreign service, but he says that. Yeah, here we go. The ALJ states that his DD-214 shows no foreign military service. I know, but is that the reason he rejected his testimony? Well, you know, it's not so... It's not that she comes out and clearly states, I'm rejecting everything he says, because here he is saying that he's got this disability that's based on the effects of combat, and yet the DD-214 shows no foreign military service. So, frankly, if that were true, if there really were no evidence, and no producible evidence that confirmed that he actually had been somewhere and done something that would actually be a reasonable basis for these PTSD symptoms, which he was describing, I think that's a great reason to completely reject his testimony. It might have been a reason, but it wasn't the reason. Pardon me? It might have been a reason, but it wasn't any reason that was given. Okay. Well, I guess I viewed it that she was actually... that it tainted her entire analysis of his reasons. Now, I also addressed in my brief all of the other reasons that she gave for rejecting his testimony. None of those withstand scrutiny either, because he's... And I run through them, each and every one of them. I don't know if you have any others that you have a particular question about. Well, I have a question on one point, and that is, if we were to end up agreeing with you and feeling that there was some mistake of process, by the ALJ, and that the case needs more review, could you give me your sense of the pros and cons of whether we should just remand the case or whether we should, as I think your brief said, reward benefits? Well, the evidence from Dr. Thompson supports the finding of disability, and it was improperly rejected. And so I think that that evidence does support disability right there. It may have been improperly rejected, but that doesn't mean it had to be credited, does it? Well... It was improperly rejected because the reasons he gave, or at least if it were, could be because some of the reasons he gave were not valid reasons, but that doesn't mean that if he partially credited, he couldn't still come to the opposite conclusion on the record as a whole. Well, I guess that's the call, is that if you accept what she said, what Dr. Thompson said is true, what her opinion says is true, and it can only lead to a finding of disability, then you might as well award benefits based on that evidence. If you believe that it isn't clear enough that it supports that, then it would be more appropriate to remand it and have the ALJ have another look at this. Similarly, the same is true for the... What were the reasons he gave for rejecting Dr. Thompson's opinion? For Dr. Thompson's opinion? Which doctor are we talking about now? Thompson. Well, one of the reasons, for example... Thompson. One of the reasons was that she was a one-time examiner, but examining physicians are always a one-time examiner. He was looking terrible. I mean, she reported all these... When she saw him, he looked dreadful. He was staring at the ground. His behavior... So she recorded a lot of... And the ALJ said, well, no one else... None of the other medical people said that, so I couldn't tell whether he was saying she's lying or he was lingering or exactly what. Well, Dr. Thompson's not... It's not like she just got out of psychologist school. She's been doing... She's been evaluating people for Social Security. This was done at the request of Social Security for, as near as I can tell, well over 10 years and probably longer. And his behavior and his symptoms that she was able to observe, on the whole, it's consistent with the findings of the VA regarding why it is that they found that his PTSD was disabling. And there's also the issue which she doesn't really address, Dr. Thompson doesn't address. It comes out more in the VA records about his OCD and how that would also impact his ability to work. So I can't... I think that's what it comes down to is if you view Dr. Thompson's opinion as having been improperly rejected, and if you accept her opinion, if it supports a finding... if it can only support a finding of disability, you should grant benefits. If you believe that that is not clear enough, then obviously the other option is to remand for a new hearing. Counsel, I want you to be able to fully answer Judge Prezant's questions if she still has a concern. But if you want to make a rebuttal argument and we want to stay on our schedule, you should. I happily reserve my minute for rebuttal. Thank you. Thank you. Okay, we now hear from... from the government. Ms. Griffith. May it please the Court, my name is Heather Griffith, here representing the Commissioner. Mr. Schifino alleges he's disabled and he bases his disability application on his own statements, which were inconsistent, the disability rating from the VA, and an evaluation by Dr. Thompson, which is equivocal at best. And the ALJ provided legitimate reasons to discount the evidence that supported disability. How are his statements inconsistent? So you touched on his military service earlier, and he alleged he served in Operation Just Cause in Panama to Dr. Thompson, yet his DD-214 shows no foreign service and shows that he did not serve in the military during the years that Operation Just Cause occurred. But what we were told previously about there being another document in the record that shows otherwise is not true. There is another document in the record that was submitted after the ALJ's decision that shows one month of foreign service. So? But he also made inconsistent... I don't understand. Why is that inconsistent? He had to be there for more than a month? The years... The month during the period that he said... You're saying that he wasn't... But apparently this document shows he was. It shows one month of foreign service, but the years are not during the years of Operation Just Cause. And he told Dr. Thompson he served in Operation Just Cause. Again, it's all about the inconsistent statements. He told the agency he served in the military until 2013, and his DD-214 shows he was honorably discharged in 1998. So he's making inconsistent statements. He told his psychiatrist, Dr. Johnson, he had a history of serial jobs, but he worked for Lowe's for about eight years prior to his onset of disability. He was able to maintain a job for that long. He testified he had problems with sleep, and he would only be able to sleep for an hour or two before having to get up due to hypervigilance and other symptoms. But he told his treating psychiatrist, Dr. Johnson, that he used medication occasionally and he had good results for sleeping. He was sleeping more deeply and more hours. Sometimes, and not other times. But he did not report fatigue to his physical treating doctors. So he's making statements to... His statements don't all line up. And that just goes to the heart of whether he's a reliable historian or not. He had very minimal and conservative treatment. He only saw Dr. Johnson, his treating psychiatrist, five times in 2015 and once in 2016. And at his last appointment, he told the doctor that his symptoms, especially for OCD, did not cause any big life issues and that he wanted no further treatment at this time. These inconsistencies undermine his statements. There's further inconsistencies relating to his activities. He reported that he had difficulty going out. He did not like to be with people he didn't know. That he isolated in his house. Yet he volunteered in his wife's third grade classroom. He volunteered for about two months as a community service officer with the police department. He chose to do activities that involved interacting with other people. He took a seven-day trip to Disneyland. And his psychiatrist commended him on how well he handled the stress of the trip and that he did a nice job identifying when he needed more space. These statements show that he is not a reliable reporter. Counsel, how do those activities translate into showing that he could hold down a job? The activities don't have to translate into showing that he can hold down a job in order to discount his statements. If there's an inconsistency between his activities and what he says he can do, the ALJ can use that to disregard his symptom testimony. However, the residual functional capacity that the ALJ found is severely socially limited. The ALJ concluded he could perform tasks that had no public contact, no teamwork, and only occasional changes in the work setting. So an occasional interaction with coworkers. So these are not jobs that are going to require a large amount of customer service like his previous job at Lowe's. Turning to Dr. Thompson's opinion, the ALJ provided several reasons to discount the opinion, noting the inconsistencies between the record and between... Did Dr. Thompson make a specific conclusion with regard to his ability to work? No, Dr. Thompson did not say, I think he's disabled, I think he's not disabled. Furthermore, Dr. Thompson did not even quantify the limitations she found. She found his ability to adapt to routine changes  of mood and anxiety and frustration. But she did not quantify that in terms of whether that would happen occasionally, whether that would happen all the time. The state agency doctors reviewed Dr. Thompson's opinion and translated it into functional limitations appropriate for an RFC and noted that, for example, his concentration would be... He could be distracted by coworkers and recommended that he not have a job before he was required to do teamwork. They took into account some of her statements in certain ways. Further, I'll answer the question of whether remand for disability finding or remand for further proceedings would be appropriate. I don't believe Dr. Thompson's opinion clearly shows disability in a way that this court could find that a remand for finding of benefits is required. And I would point the court to the Dominguez case where there was an adverse credibility finding and inconsistent medical opinions, and the court found that that was enough to find that further proceedings were necessary if the ALG's opinion was not supported by substantial evidence. If there are no further questions, I would ask this court should find that the ALG's findings are supported by substantial evidence and affirm. Thank you. Thank you very much, counsel. Can you tell me what it is...  The ALG said he wasn't... He was not crediting Dr. Thompson's opinion, but what was he not... I mean, she didn't make any actual conclusions. One second for a minute. Judge Berzon, one second. I'm sorry? Kelly has to start the clock. I have a question. May I ask a question? Thank you. Sorry. What is it about... If you credited Dr. Thompson's opinion, did she come to any conclusions about his ability to work? Well, that's a good question. What's interesting is that if she had, if she had just come right out and said, based on my evaluation of him today, I believe that he is disabled, that would merit no weight because that's an issue that's reserved to the commissioner. Well, what did she say that had it been credited would have changed anything? So his, well, the likely... Okay, his ability to reason is variable. His sustained concentration and persistence is inconsistent. His social interaction and... Well, they accounted for the social interaction problem, I think, in the RFC. But his ability to adapt to routine changes... He demonstrated satisfactory, receptive, and expressive language, a good fund of knowledge, and adequate ability to execute a simple three-step direction. His ability to follow complex instructions were good. His memory functions were good. His sustained concentration and persistence were inconsistent. And, let's see. So the main thing she said is that his social and interpersonal relationships are very limited. And his ability to adapt to routine changes in a typical work setting. That's, I think, the biggest limitation there. And if that's, you know, that's the best we can, that was the strongest limitation in her opinion. If I could real quickly just address the DD-214 again. I don't know why the government won't admit that they're wrong on this issue. Because there's a DD-214 in the file. It shows a month of service at Fort Clayton in Panama. And for them to even stand up in court... Yes. Well, you know, I've always assumed that. But it's at page 191 in the transcript. And it's just, once again, you're not, the military doesn't put that you were stationed at Fort Clayton for a month. They don't make that up. And the fact that the government keeps telling us, telling you in court today, that that's not what it is, is just not true. Counsel, I'm afraid we're over time for argument. Thank you very much. Unless one of the judges has a question, we should conclude. I have nothing further. Thank you. Thank you. I want to thank both counsel for their excellent arguments. And this case shall be submitted.
judges: Gould, Berzon, Benitez